# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PAIGE STROBEL,**

            **Plaintiff,**

      v.                                  Case No. 22-CV-90

**KILOLO KIJAKAZI,**
**Acting Commissioner of the Social Security Administration,**

            **Defendant.**

## DECISION AND ORDER

**1. Introduction**

Alleging she has been disabled since July 1, 2019 (Tr. 38), plaintiff Paige Strobel seeks supplemental security income and disability insurance benefits. She was insured through June 30, 2021. (Tr. 13.) After her application was denied initially (Tr. 67-100) and upon reconsideration (Tr. 114-33), a hearing was held before Administrative Law Judge (ALJ) Brent C. Bedwell on March 24, 2021 (Tr. 33-66). On June 1, 2021, the ALJ issued a written decision concluding that Strobel was not disabled. (Tr. 10-27.) After the Appeals Council denied Strobel's request for review on November 19, 2021 (Tr. 1-6), she filed this

action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 7), and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Strobel "has not engaged in substantial gainful activity since July 1, 2019, the amended alleged onset date[.]" (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Strobel has the following severe impairments: fibromyalgia, obesity, anxiety, ADHD, depression, PTSD/Trauma disorder. (Tr. 16.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-

month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Strobel "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 16.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Strobel has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can perform jobs that are unskilled and involve only routine job tasks and instructions; can maintain attention, concentration, persistence, and pace for simple and repetitive tasks for two-hours at a time over the workday; can perform jobs having only occasional decision-making and occasional changes in the work setting; and can have only occasional interaction with coworkers and supervisors but no interaction with the public.

(Tr. 18.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Strobel "is capable of performing past relevant work as a machine offbearer." (Tr. 24.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that, in addition to her past relevant work, Strobel could work as:

> Mail Room Clerk, DOT code 209.687-026, is a light, unskilled, specific vocational preparation (SVP) of 2 occupation and there are approximately 48,000 jobs in the national economy.
>
> Office Helper, DOT code 239.567-010, is a light, unskilled, specific vocational preparation (SVP) of 2 occupation, after an erosion of 30 percent of the total number of such positions due to no public interaction, there are approximately 17,400 such positions in the national economy.
>
> Marker, DOT code 209.587-034, is a light, unskilled, specific vocational preparation (SVP) of 2 occupation and there are approximately 954,000 jobs in the national economy.

(Tr. 26.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C.

§ 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. **Analysis**

   **4.1. Opinion Evidence**

   Strobel contends that the ALJ erred when he rejected the opinions of the state agency psychological consultant and her treating psychiatrist regarding how often she would likely miss or be late for work. (ECF No. 15 at 8-13.)

   An ALJ must evaluate every medical opinion and explain the persuasiveness of each. 20 C.F.R. §§ 404.1520c(a), (b); 416.920c(a), (b); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). In doing so, the ALJ must consider how well the opinion is supported by objective medical evidence and the medical source's explanations; how consistent the

opinion is with other evidence; the nature and extent of the source's relationship with the claimant; the medical source's specialization; and any other relevant factors. 20 C.F.R. §§ 404.1520c(c); 416.920c(c). The supportability and consistency of an opinion are the most important factors. 20 C.F.R. §§ 404.1520c(a), (b)(2); 416.920c(a), (b)(2).

State agency psychological consultant Dr. Jason Kocina, PsyD., concluded that Strobel would likely be absent or tardy twice a month. (Tr. 1135.) The vocational expert testified that missing work more than once a month would be work preclusive. (Tr. 61.) The ALJ stated that Kocina's opinion was "only partially persuasive," addressing the absenteeism aspect of Kocina's opinion only to state, "For example, the objective record does not support the claimant would be absent or tardy from work twice per month." (Tr. 24.)

The ALJ failed to explain or support his conclusion that the objective record does not support Kocina's finding regarding Strobel's absenteeism. The court finds ample evidence that could support Kocina's absenteeism finding. Strobel testified that she lost her prior jobs because of her excessive absenteeism. (Tr. 44.) Her psychiatrist—the only one she was willing to see—stopped seeing her for a time because she had missed too many appointments (Tr. 53), as did her physical therapist (Tr. 75; 534). And even when she was in high school (she was only 21 years old on the alleged onset date) she was frequently absent, so much so that it interfered with her performance. (Tr. 303; 352.)

6

Case 2:22-cv-00090-WED   Filed 08/31/22   Page 6 of 12   Document 19

Moreover, Dr. Rakesh Shah, MD, who had long been Strobel's treating psychiatrist, stated that Strobel would be absent about four days per month. (Tr. 1047.) The ALJ found Shah's opinion "only partially persuasive" (Tr. 22) but, again, did not address the opinion about absenteeism. Instead, he noted broadly that Shah's "treatment notes describe the claimant with good attention and concentration, insight, memory, alert, pleasant or cooperative, well groomed, and generally normal mental status—even during appointments where the claimant reports increased symptomology." (Tr. 22.) The ALJ acknowledged that there were periods when Strobel failed to comply with treatment and that her noncompliance may be attributable to her impairments. But he then noted that Strobel "testified her conditions are generally controlled when she takes her medication." (Tr. 22.) In the ALJ's view, this reflected "a recognition and understanding on the claimant's part that her treatment protocols are helpful to her conditions." (Tr. 22.) He further found Strobel's ability to work intermittently and parttime suggested she is not as limited as Shah found. (Tr. 22.)

The fact that Strobel had "good attention and concentration, insight, memory, alert, pleasant or cooperative, well groomed, and generally normal mental status" at appointments is not inconsistent with Shah's or Kocina's opinion regarding Strobel's absenteeism. In fact, the ALJ's reliance on Strobel's disposition at appointments overlooks her history of missing appointments. Strobel's disposition at medical appointments reflects her condition only when she is feeling well enough to attend the appointment.

Given that her symptoms resulted in good days and bad days, and that on bad days Strobel reported not being able to get out of bed (Tr. 44), an inference is that her disposition at appointments does not reflect her condition on bad days. *Cf. Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated."). But an RFC finding must assess Strobel's ability to engage in fulltime work on a sustained basis, *i.e.*, on her good days and on her bad days.

The ALJ's decision to discount Shah's and Kocina's opinions, and specifically their opinions regarding Strobel's likely absenteeism rate, is not supported by substantial evidence. Accordingly, remand is required.

**4.2. RFC – Concentration, Persistence, and Pace**

Strobel argues that, because the ALJ rejected all the medical opinions regarding the extent of her mental limitations, the RFC finding was not supported by substantial evidence. Instead, the ALJ applied his own lay judgment, which was based on factual errors, such as finding that she had generally normal attention and concentration despite the fact that medical providers consistently marked these as poor. (ECF No. 15 at 14.) She highlights the ALJ's finding that she would be able to "maintain attention, concentration, persistence, and pace for simple and repetitive tasks for two-hours at a time over the workday," even though he found at step three that she had a moderate limitation in these

domains. Strobel contends that the ALJ committed the common error of accounting for limitations in concentration, persistence, and pace by limiting her to simple and repetitive work.

The Commissioner responds that the ALJ's RFC findings were consistent with the opinion of the state agency psychological consultant, Dr. Robert Barthell, PsyD. (ECF No. 17 at 11-14.)

The ALJ, however, found Barthell's opinion "only partially persuasive." (Tr. 23.) The ALJ was very clear that he rejected Barthell's opinion insofar as Barthell found that Strobel had other than moderate limitations. (Tr. 23.) Having found that Strobel had "moderate deficits in all functional domains" (Tr. 23), including "concentrating, persisting, or maintaining pace" (Tr. 17), the ALJ was required to account for these limitations in the RFC. Limiting Strobel to simple and repetitive tasks was not enough. *See Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015).

**4.3. Symptoms**

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, he "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms

is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work related activities…." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

> The ALJ must also consider, to the extent they are relevant, the following factors:
>
> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

Strobel argues that the ALJ failed to properly assess her symptoms because he improperly relied on her noncompliance with treatment, placed undue weight on the fact that she did not seek emergency care after the alleged onset date, improperly assessed her daily activities, and placed undue weight on an isolated statement where Strobel

expressed concern about losing Medicaid coverage if she earned too much. (ECF No. 15 at 17-18.)

The ALJ erred in certain aspects of his assessment of Strobel's symptoms. For example, after noting that Strobel is able to prepare her own meals, the ALJ stated, "The ability to prepare such meals exemplifies the claimant's ability to follow written instructions, in contrast to her allegations that she is unable to follow instructions." (Tr. 20.) However, the ALJ also acknowledged, "Additionally, she indicated while she does prepare meals—the meals are very simple such as frozen meals and sandwiches." (Tr. 19.) The preparation of such meals involves minimal, if any, instructions. Therefore, the ALJ's finding that Strobel's ability to prepare her own meals is inconsistent with her professed inability to follow directions is unsupported by the evidence.

The ALJ also failed to adequately explain why the fact that Strobel "enjoys drawing, writing, socializes via phone, and spends time with her child when she can" "undermines her assertions that she is incapable of caring for herself independently and that her conditions are as severe as they preclude all possible work." (Tr. 20.) The ability to engage in these activities is not obviously inconsistent with an ability to work.

As for her non-compliance with treatment, the ALJ acknowledged that Strobel's non-compliance may be a product of her impairments. (ECF No. 20-21.) But he dismissed that possibility, noting, in part, "the record notes the claimant generally appears on time, well dressed, and building rapport with providers during her appointments." As

11
Case 2:22-cv-00090-WED   Filed 08/31/22   Page 11 of 12   Document 19

discussed above, given Strobel's history of missing appointments, her disposition at the appointments she attended may not fairly reflect her overall condition. Rather, she may well have attended appointments only on her good days. Consequently, the ALJ's flawed assessment of Strobel's symptoms is an additional reason why remand is required.

**5. Conclusion**

For the reasons set forth above, the court must remand this action to the Commissioner.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 31st day of August, 2022.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge